**In the Matter of Randy E. WEGENER, Debtor.**

**Bankruptcy No. BK93–40257.**

United States Bankruptcy Court, D. Nebraska.

Sept. 1, 1995.

Lance J. Johnson, Bruning, NE, for debtor Randy E. Wegener.

W. Eric Wood, Omaha, NE, for creditor Superior Lottery, Inc.

*MEMORANDUM*

JOHN C. MINAHAN, Jr., Bankruptcy Judge.

Before this court is the debtor's objection to the proof of claim filed by Superior Lottery, Inc. for the unpaid purchase price of Keno tickets in the amount of $24,780.00. Debtor's objection is overruled.

### FINDINGS OF FACT

Superior Lottery, Inc. ("Superior") filed a proof of claim in this Chapter 7 bankruptcy case for an unsecured claim totalling $24,-780.00. Superior's claim arises out of the debtor's purchase of "Keno Tickets" from Superior on December 28, 1991. Debtor had the unfortunate experience of initially betting and losing on a Keno game and then doubling his bet in an attempt, presumably, to recover his loss. He continued to lose then double his bets, until he had lost $12,280.00. This debt is evidenced by checks totalling that amount which he delivered to Superior at the time of making each bet. All these checks were subsequently dishonored by the drawee bank due to insufficient funds in debtor's account.

In addition to the claim of $12,280.00, evidenced by the dishonored checks, Superior asserts a $12,500.00 claim which arose from the unpaid purchase price for other tickets purchased by the debtor. After debtor had lost $12,280.00 in bets, debtor advised Patricia Gunn, an employee of Superior, that he wished to buy additional tickets in the total amount of $12,500.00 for the next Keno

game. Patricia Gunn prepared and printed the tickets as requested by the debtor. The debtor then approached Cynthia Bates, the store employee who had been given physical possession of the tickets, and requested that the tickets be delivered to him. Cynthia Bates delivered the tickets to the debtor and he accepted them. Cynthia Bates delivered the tickets to the debtor, mistakenly believing that debtor had already paid Patricia Gunn the $12,500.00 purchase price. Subsequently, the game was played and the debtor lost. Later, the Superior employees discovered that the debtor had not paid for the tickets issued to him. Patricia Gunn immediately requested payment from the debtor, who refused to tender payment.

The Debtor asserts that Superior's claim should be denied for the reason that the debt owing Superior is not supported by any consideration; or, in the alternative, that he did not intend to create a debt between himself and Superior, that he did not write in the date or payee on the checks he delivered to Superior, that employees of Superior were aware he did not have the funds to write checks in these amounts and because debtor was an employee of Superior.

Superior asserts that debtor's purchases were bona fide transactions for tickets on which it was liable to remit to the City of Superior a percentage of the receipts. In fact, Superior has remitted 86% of the $24,-780.00 to the City.

### DISCUSSION

■ As a preliminary matter, it should be noted the claim of Superior arose in a Keno game that was legally conducted. Debts which arise in lawful gambling transactions are properly allowed as claims in a bankruptcy case. *See, e.g., In re Smith,* 66 B.R. 58 (Bankr.D.Md.1986), *aff'd,* 77 B.R. 33 (D.Md. 1987).

■ With respect to the $12,280.00 portion of the claim evidenced by dishonored checks, the checks evidence bona fide transactions in which the debtor purchased tickets. The tendering and acceptance of the check in exchange for tickets constituted conditional payment. NEB. U.C.C. § 3–310(a)

(Reissue 1992). Upon dishonor of the check by the drawee bank, the payee (Superior) held a claim against the drawer (debtor) on the instrument or on the underlying contract. See NEB. U.C.C. §§ 3–502(b), 3–310(b) (Reissue 1992). As to the $12,500.00 in unpaid tickets, I again conclude that a contract for the purchase of tickets existed. The debtor made an offer to purchase the tickets. The offer was accepted by performance of the issuer, Superior, by the preparation and issuance of the tickets at debtor's request, and the physical delivery of the tickets to debtor. There was no failure of consideration. Superior incurred a legal detriment. The bargained-for exchange of the ticket price for tickets representing a chance at a Keno prize constitutes sufficient consideration to support an enforceable contract. Further consideration was provided by Superior incurring a financial obligation to the City by virtue of the issuance of the tickets.

■ I also conclude that there is no basis for the remainder of debtor's objections. In the affidavit in support of his objection, Randy Wegener states that it was not his intention to create a debt, that he did not fill in the payee's name on the checks which he delivered to the claimant, that employees of Superior Lottery were aware that he did not have funds to cover the checks, and that, with respect to the $12,500.00 wager, employees of Superior Lottery did not request payment for those tickets until they were in the possession of the debtor and that Superior Lottery did not receive any payments for the tickets prior the beginning of the game for which the tickets were issued. These arguments and assertions of fact are without merit.

The undisputed facts establish that offers to purchase the tickets were made. The tickets were issued at the specific request of the debtor, delivered to him, and accepted by him. The debtor issued the checks and delivered them to Superior. Superior Lottery was in rightful possession of the checks and had the right to complete the date and name of the payee. The debtor thus entered into binding contracts to purchase the tickets. These contracts are binding upon him whether or not he had funds in his checking ac-

count to cover the amount of the checks and whether or not he had in fact paid for the tickets before the game was completed. Likewise, debtor's secret intentions respecting the transaction are not controlling over his objective manifestations of intent to enter into a binding contract.

 Although counsel for debtor acknowledges that the betting transactions were legal when made, he nonetheless argues that it offends public policy to permit an employee of a seller of lottery tickets to play the game. Nebraska Revised Statutes section 9–646 (Reissue 1991), is the relevant statutory authority on this issue. This statute places no limitations upon the participation in a lottery by employees of any lottery operator. However, section 9–646 specifically authorizes a county, city or town which authorizes a lottery, to place limitations upon an employee's participation in games conducted by his employer. In support of the debtor's objection, counsel for debtor offered a copy of an ordinance of the City of Superior. But the ordinance does not in any way provide a defense to Superior's claim. The city ordinance was not in effect at the time the transaction took place. And, the ordinance explicitly permits an employee to play such a lottery. Therefore, the only rule or regulation in force when this transaction took place was Nebraska Revised Statutes section 9–646, which does not prohibit an employee of a lottery operator from participation in a lottery game. Section 9–646 merely delegates rule-making authority on this issue to local governments. The transaction was legal under Nebraska law and it is inappropriate for a court to declare the transaction illegal or the debt unenforceable on policy grounds.

Debtor's objection to the proof of claim of Superior Lottery will be overruled by separate order.